UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cr-76-MOC-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SHAUN ISIAH-JEFFREY HINSON, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 68). The Government has responded in opposition to the motion. (Doc. No. 73). For the following reasons, Defendant's motion will be **DENIED**.

**I. BACKGROUND**

On December 17, 2014, this Court sentenced Defendant to a total of 168 months following his guilty pleas to Armed Bank Robbery, Possession of a Firearm in Furtherance of a Crime of Violence, and Bank Robbery. (Doc. No. 38 at 1–2). Defendant is currently serving this sentence at Coleman I USP, a high security U.S. penitentiary in Coleman, Florida.[1] According to BOP records, as of July 13, 2022, Defendant has served eight years, six months, and one day, which BOP officials calculate as roughly 69.9% of his anticipated statutory term of imprisonment. (Gov. Ex. 1, Doc. No. 73-1 at 4). Defendant's projected release date with full good time credit is March 9, 2026. (Id.).

On January 31, 2022, Defendant filed his first pro se motion for compassionate release.

---

[1] Federal Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc// (last accessed July 13, 2022).

1

(Doc. No. 63). Defendant sought release based on the COVID-19 pandemic and his purported good conduct in prison. (Id.). Following a response by the Government, this Court denied Defendant's motion without prejudice on March 11, 2022, for failure to exhaust his administrative remedies. (Doc. No. 67). Defendant filed a second pro se motion on June 17, 2022. (Doc. No. 68). On June 27, 2022, the Court ordered the Government to respond. (Doc. No. 70). The Government has responded in opposition to the motion. (Doc. No. 73). Thus, this matter is ripe for disposition.

II. DISCUSSION

Once a defendant properly exhausts his administrative remedies, this Court may reduce Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. That policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, the Court is "empowered . . . to consider any extraordinary and

2

compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may consider the § 1B1.13 factors, however, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. As the movant, Defendant still bears the burden of establishing that he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Defendant's second motion for compassionate release asserts three reasons to support his argument as to why a reduction in his sentence is appropriate. First, Defendant briefly asserts that he has been rehabilitated and is no longer a safety risk to the community. (Doc. No. 70 at 1). He asserts that he only has three disciplinary infractions in prison and has been participating in different programs offered to inmates. (Id.). It is well settled that compassionate release cannot be based on rehabilitation alone, and a defendant's claim of an exemplary prison record and being successfully rehabilitated does not present an extraordinary circumstance. United States v. Washington, 2019 WL 6220984 (E.D. Ky. Nov. 21, 2019). Furthermore, Defendant's most recent disciplinary infraction from January 2022 involves making a sexual proposal/threat toward female staff. (Gov. Ex. 2, Doc. No. 73-2). Specifically, Defendant told a female prison staffer that he could "easily get your pussy, stupid bitch." (Id.). This behavior undermines Defendant's assertion that he has been a good inmate who has been fully rehabilitated.

The second reason asserted by Defendant to support his motion involves his lack of safety in the Bureau of Prisons. (Doc. No. 70 at 1). Defendant was involved in an altercation with another inmate and suffered multiple stab wounds in May of this year. (Id.). In his motion, Defendant contends that he almost died and that he has shortness of breath and cannot sleep on

3

his side due to ongoing pain. (Doc. No. 68 at 1). A review of his medical records details his encounter with BOP Health Services on May 13, 2022, following the assault. Those records note that Defendant "denied shortness of breath" as well as any pain or discomfort, and that the stabbing wounds were approximately 1/8 to 1/4 of an inch in diameter and only 1/8 to 1/4 of an inch deep, "superficial depth" per the comments from the medical provider. (Id.). Health services was able to stop any bleeding with pressure dressing where Defendant was punctured. (Id.). The medical records provide no support for Defendant's claim in his motion that he almost died. Further, more recent medical records indicate that BOP Health Services has attempted to maintain a plan of care for Defendant, but he has been uncooperative, refusing to have an x-ray taken of his chest on June 22, 2022. (Gov. Ex. 3, Doc. No. 74 at 105). The fact that Defendant was assaulted and suffered treatable injuries does not present an extraordinary and compelling reason to reduce his sentence.

The third and final reason that Defendant provides in his motion for compassionate release is the fact that he tested positive for COVID-19 in March of this year, and he fears the virus will take his life in prison. (Doc. No. 70 at 2). A review of his medical records confirms that Defendant did test positive for COVID-19, but it appears to have occurred in January of 2022. (Doc. No. 74 at 63). Before testing positive, Defendant had elected not to receive the COVID-19 vaccine. Defendant finally decided to take the first dose of the Moderna vaccine on March 31, 2022, and he received his second dose on May 27, 2022. (Id. at 123 and 127).

Courts have held that a defendant who has been vaccinated or has previously recovered from COVID-19 cannot demonstrate a "compelling" or "exceptional" justification for release. See, e.g., United States v. Adkins, 854 F. App'x 758, 759–60 (7th Cir. Aug. 5, 2021) (upholding district court's denial of defendant's compassionate release motion on the basis that the

4

defendant had been fully vaccinated against COVID-19); United States v. Burks, No. 3:14-CR-208-MOC-1, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021) (denying defendant's compassionate release motion, explaining that "the prevailing scientific view is that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus" and that "[g]iven that Defendant has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition that is terminal or severely limits his ability to function in a correctional setting"); United States v. Williams, No. 5:01-CR-00012-KDB, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) (denying defendant's compassionate release motion, noting that the defendant had received the first dose of the Pfizer-BioNTech vaccine and would soon be fully vaccinated, and explaining that "[b]eing vaccinated against COVID-19 seriously undermines Defendant's assertion that 'extraordinary and compelling reasons' warrant his release from prison"); United States v. Wakefield, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (denying defendant's compassionate release motion where the defendant had received the first dose of the COVID-19 vaccine, explaining that "[b]ecause he has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the Defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release").

In sum, Defendant fails to identify any extraordinary and compelling reasons to modify his sentence. Most importantly, his complete vaccination status undermines his claims of fear from the COVID-19 pandemic and, standing alone, his unsupported claims that he is now rehabilitated are not an extraordinary and compelling reason for compassionate release.

The Court further finds that the factors set forth in 18 U.S.C. § 3553(a) counsel against release. Defendant seeks immediate release, despite having only served approximately eight and

5

a half years of his fourteen-year sentence. In addition to being unable to demonstrate extraordinary and compelling reasons for this request, the § 3553(a) factors continue to demand a sentence well beyond the time Defendant has served to this point. Defendant's crimes were extremely serious. He actively participated in multiple bank robberies. In the first robbery on November 18, 2013, Defendant brandished a handgun and held bank employees at gunpoint before stealing nearly twenty-four thousand dollars. (Doc. No. 24 at 1–2). One month later, on December 18, 2013, Defendant entered another bank wearing a ski mask and gloves and stole over forty thousand dollars. (Id. at 2). A few weeks later, in January of 2014, Virginia State Police attempted to stop a Mercedes sports car for speeding in excess of 120 miles per hour. (Id.). The driver, later identified as Defendant, led officers on a chase and ultimately abandoned the vehicle and ran away. (Id.). However, in the vehicle officers were able to recover Defendant's ID along with gloves, jeans, and shoes matching those worn by the perpetrator of the bank robberies, Bank of America money straps, and a loaded 9mm handgun matching the one brandished in the November robbery. (Id. at 2–3). The sentence imposed by this Court was at the bottom of the guidelines range, followed by the mandatory consecutive seven years on the § 924(c) count. (Doc. No. 39 at 1). This sentence was sufficient, but not greater than necessary, to reflect the seriousness of Defendant's criminal conduct, afford adequate deterrence to criminal conduct, and protect the public from further crimes from Defendant.

Moreover, before the incident offenses, Defendant accumulated an extensive criminal record. His most serious criminal convictions include First Degree Robbery out of New York in 2005, which involved forcible theft and attempted theft from multiple individuals while armed with a firearm, Promoting Contraband to Prisoners out of New York in 2005 (Defendant found in possession of a shank in prison), Unlawful Fleeing from a Police Officer in a Motor Vehicle out

of New York in 2011, and Assault out of New York in 2012 (Defendant involved in altercation with the mother of one of his children, bending her fingers back and causing a nail to break). (Doc. No. 34 at 9–13). Defendant's criminal history indicates a propensity for violence. The incident robberies for which he is currently serving his sentence were not his first time putting the safety of the community at risk. As evidenced by his prior convictions, he showed his lack of qualms with brandishing weapons and threatening others early in his criminal career.

Defendant offers neither specific evidence nor argument regarding the relevant sentencing factors other than general claims that he has learned his lesson while in prison and won't make similar mistakes in the future. When imposing Defendant's original sentence, this Court properly considered the nature and circumstances of the incident offenses, along with the history and characteristics of Defendant. That sentence appropriately reflected the seriousness of the offenses, provided just punishment, afforded adequate deterrence to future criminal conduct, and protected the community from future crimes committed by Defendant. Section 3553(a) therefore counsels the same sentence today that this Court imposed in 2014. In sum, a substantial reduction in sentence is not supported by either the statutory sentencing factors or the Sentencing Commission's policy statements. For all these reasons, the Court will deny Defendant's motion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 68), is **DENIED**.

Signed: July 26, 2022

Max O. Cogburn Jr
United States District Judge